Filed 4/18/23  In re N.C. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION SIX

| | |
|---|---|
| In re N.C. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B323780 (Super. Ct. Nos. J072703, J072848) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. M.V., Defendant and Appellant. | |

M.V. (Father) appeals from the juvenile court order terminating his parental rights as to N.C. and T.V.  He contends the court erred in concluding the Indian Child Welfare Act of

1978 (ICWA, 25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224 et seq.)[1] did not apply. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Mother and Father had two sons together, N.C. and T.V. The Ventura County Human Services Agency (the agency) filed dependency petitions regarding N.C. (§ 300, subds. (b)(1), (g), (j)) and T.V. (§ 300, subds. (b)(1), (j)).

The juvenile court sustained both petitions. The court found the ICWA did not apply, terminated parental rights, and found adoption to be the permanent plan. (§ 366.26.)

*ICWA investigation*

Both Mother and the maternal grandmother denied any Native American ancestry.

Father initially told the agency his great-grandfather had " 'Indian tribal blood,' " but could not provide the name of the tribe or any other information. Father later stated the children may be members or eligible for membership in the White Mountain Apache Tribe because his grandfather may have been registered or eligible to register.

The agency contacted two paternal great aunts, one of whom stated her biological father's family was associated with the White Mountain Apache Tribe. She said her biological father was not enrolled or registered with the tribe. She said her father's siblings attempted to register but were turned away. Neither great aunt had any contact information for these family members.

---

[1] Subsequent undesignated statutory references are to the Welfare and Institutions Code.

The agency contacted the paternal grandmother, who stated the paternal great-grandfather was registered with the Blackfeet Tribe. To her knowledge, the paternal grandfather was not registered. She was unable to contact family members. The paternal great-grandmother had no information regarding the children's membership or eligibility for enrollment.

The agency sent letters entitled "ICWA INQUIRY Based on REASON TO BELIEVE Finding" to the Bureau of Indian Affairs (BIA), California Department of Social Services (CDSS), Blackfeet Tribe, and White Mountain Apache Tribe. The letters included the children's and the parents' names and dates of birth, the names and reported tribal ancestry of the paternal grandfather and great-grandfather, and the status of the juvenile cases. The Blackfeet Tribe wrote back and confirmed the children were neither enrolled, eligible for enrollment, nor domiciled on a Blackfeet reservation. The White Mountain Apache Tribe wrote back and confirmed the children were not enrolled, and that no record of tribal lineage existed.

The maternal grandfather later told the agency his grandfather and great aunt were Cherokee and once lived on a reservation in Oklahoma. In response, the agency sent letters to the three federally-recognized Cherokee tribes. The letters included the children's and the parents' names and dates of birth, the names and reported tribal ancestry of the maternal grandfather, great-great-grandfather, and maternal great-great aunt, and the status of the cases. The Cherokee Nation confirmed that neither the children nor their parents were registered as tribal citizens. The United Keetoowah Band of Cherokee Indians and the Eastern Band of Cherokee Indians confirmed the children were not registered or eligible to be

3

registered as members. All three tribes verified the children were not Indian children in relation to the tribe.

The agency included the information and correspondence regarding its ICWA inquiries in its reports filed with the court.

On August 3, 2022, the juvenile court continued the section 366.26 hearing and set an ICWA hearing. The court asked whether there was "a reason to know this might be an Indian child and we need to send out a notice of hearing?" The agency responded, "I think it's just—it will be safest to just have the Agency go ahead and send out the notice so that we don't delay these proceedings." The court responded, "Okay. Well, then the ICWA-030[2] is going to need to be prepared."

At the section 366.26 hearing two months later, the agency said it was not necessary to send ICWA-030 forms because "[t]he Agency has heard . . . from all possible tribes, Blackfeet, White Mountain Apache Tribe and all three Cherokee tribes all stating that each child is not a member of the tribe and not eligible for enrollment in the tribe." The court responded, "I'm finding that the Agency has satisfied its duty of further inquiry." The court found the ICWA did not apply.

## DISCUSSION

The ICWA serves "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families." (25 U.S.C. § 1902; Welf. & Inst. Code, § 224.) When the facts are undisputed, we independently review compliance with the ICWA.

---

[2] Judicial Council Forms, form ICWA-030, Notice of Child Custody Proceeding for Indian Child.

4

(*In re A.M.* (2020) 47 Cal.App.5th 303, 314.)  We review the juvenile court's determination that the ICWA does not apply for substantial evidence.  (*In re A.M.*, at p. 314; § 224.2, subd. (i)(2).)

" 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4); § 224.1, subd. (a).)  Whether or not a child is a member or eligible for membership is conclusively determined by the tribe.  (§ 224.2, subd. (h).)

*Required inquiries*

Father does not contend the agency or the court failed to contact any family members, tribes, or others who might have had information about the minors' status.  (§ 224.2, subd. (e)(2)(A), (C).)  Instead, he contends the agency and the court erred when they failed to send ICWA-030 forms to the Apache, Blackfeet, and Cherokee tribes.  There is no error.

In dependency cases, the court and the agency "have an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child."  (§ 224.2, subd. (a).)  The process is divided into three phases: an initial duty to inquire in all cases, a duty of further inquiry when there is *reason to believe* the child may be a tribal member or eligible for membership, and a duty to provide formal notice when there is *reason to know* the child is a member or eligible for membership.  (*In re D.F.* (2020) 55 Cal.App.5th 558, 566-567.)

"There is reason to know a child . . . is an Indian child" when: (1) "[a] person having an interest in the child . . . informs the court that the child *is* an Indian child," (2) the child, parent, or Indian custodian lives on a reservation, (3) a designated

5

person "informs the court that it has discovered information indicating that the child *is* an Indian child," (4) "[t]he child . . . gives the court reason to know that the child is an Indian child," (5) the child has been a ward of a tribal court, or (6) the parent or child has a tribal membership identification card. (§ 224.2, subd. (d), italics added.)

None of the circumstances constituting "reason to know" apply here. Although the court and the agency did "not have sufficient information to determine that there [was] *reason to know* that the child[ren] [were] Indian child[ren]," there was "*reason to believe*" they might be Indian children based on "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e), (e)(1), italics added.) Accordingly, the court or agency was required to "make further inquiry" into the children's status, including interviewing family members, contacting the BIA and CDSS, and contacting tribes who might have information. (§ 224.2, subd. (e), (e)(2); Cal. Rules of Court, rule 5.481(a)(4).) Formal notice (ICWA-030) was not required because the inquiry was based on a *reason to believe* and not a *reason to know* the children were Indian children. (§ 224.3; Cal. Rules of Court, rule 5.481(c); *In re A.M.*, *supra*, 47 Cal.App.5th at pp. 321-322; *In re D.F.*, *supra*, 55 Cal.App.5th at pp. 568-572.) Instead, the "further inquiry" required only "informal contact with the tribe." (*In re T.G.* (2020) 58 Cal.App.5th 275, 290.)

At one point the juvenile court agreed with the agency's suggestion to send ICWA-030 forms to the tribes, but later agreed the forms need not be sent. Because there was no reason to know the children were Indian children, the law did not require formal notice.

*Required filings*

Father contends the agency failed to provide sufficient information to the court because it failed to execute and serve ICWA-030 forms on the tribes. We disagree.

" 'In order for the court to make a determination whether the notice requirements of the ICWA have been satisfied, it must have sufficient facts, as established by the Agency.' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 408.) "The petitioner must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes." (Cal. Rules of Court, rule 5.481(a)(5); *In re Josiah T.*, at p. 406.) The agency here provided the required information in the reports and correspondence it filed with the court.

There are additional filing requirements when there is "reason to know" the children are Indian children. (§ 224.3, subd. (a); 25 C.F.R. § 23.111(a) (2022).) For example, section 224.3, subdivision (c), provides, "[p]roof of the notice, including copies of notices sent and all return receipts and responses received, shall be filed with the court in advance of the hearing." But these requirements do not apply here because there was only "reason to believe" Indian children might be involved.

*Conclusion*

"If the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that the [ICWA] does not apply to the proceedings, subject to reversal based on

7

sufficiency of the evidence." (§ 224.2, subd. (i)(2).) Because substantial evidence establishes the agency and the court conducted a diligent good faith inquiry, the court did not err in concluding the ICWA was inapplicable. (*In re D.F.*, *supra*, 55 Cal.App.5th at pp. 570-571.)

DISPOSITION

The order terminating Father's parental rights is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.

YEGAN, J.

8

8

Tari L. Cody, Judge

Superior Court County of Ventura

_____

Emery El Habibi, under appointment by the Court of Appeal, for Defendant and Appellant.

Tiffany N. North, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.